IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DONNA LEE ALFREY,

           Plaintiff,

vs.                             Case No. 11-4117-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

           Defendant.

MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

    The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984

1

(10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment

expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If

the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four

and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II.  History of case**

On November 9, 2010, administrative law judge (ALJ) Michael D. Schilling issued his decision (R. at 10-18).  Plaintiff alleges that she has been disabled since May 23, 2007 (R. at 10).  Plaintiff is insured for disability insurance benefits through December 31, 2012 (R. at 12).  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 12).  At step two, the ALJ found that plaintiff had the following severe impairments:  osteoarthritis, degenerative joint disease, and obesity (R. at 12).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 12).  After determining plaintiff's RFC (R. at 13), the ALJ determined at step four that plaintiff was unable to perform past relevant work (R. at 16).  At step five, the ALJ determined that other jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 17).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 18).

**III.  Did the ALJ err in his consideration of the opinions of Dr. Wright, plaintiff's treating physician?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the

opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

<u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. <u>Watkins</u>, 350 F.3d at 1301.

The ALJ made the following RFC findings:

> …claimant has the residual functional capacity to perform sedentary work…The claimant retains the capacity to lift and carry 10 pounds occasionally and 10 pounds frequently; walk and stand two hours in an eight hour workday; sit six hours in an eight-hour workday; and occasionally climb stairs. The claimant should never climb ropes, scaffolds or ladders; only occasionally balance, stoop, crouch, kneel or crawl; and only occasionally push/pull with right lower extremities. The claimant must avoid prolonged exposure to extreme cold temperatures and vibrations.

(R. at 13). Dr. Wright indicated on May 5, 2009 that plaintiff could only lift less than 10 pounds, could only stand/walk for 2 hours in an 8 hour workday, and could only sit for 3 hours in an 8 hour workday. He opined that she needed to lie down at unpredictable times during the workday, and could never stoop(bend), crouch, or climb stairs or ladders. He further

indicated that her ability to handle, finger, feel and push/pull was affected by her impairments. He also indicated that she would need to miss more than 3 times a month because of her impairments or treatment (R. at 289-293). On August 11, 2010, Dr. Wright affirmed the earlier limitations (R. at 387).

Dr. Wright also signed a certificate of medical necessity for plaintiff to purchase a power operated vehicle and a certification for a disability parking placard (R. at 15, 362, 366-367). The ALJ stated the following regarding the opinions of Dr. Wright:

> The undersigned finds no support for these accommodations and restrictions given the dearth of objective evidence supporting Dr. Wright's findings. In fact, the opinions are in opposition to the claimant's back and hand x-rays completed in 2007 noted above. The prescriptions appear to have been supplied at the request of the claimant and not arising out of any medical necessity. While the claimant does have severe impairments that limit her performance of work-related activities, the undersigned finds the severe limitations imposed by Dr. Wright not supported by the objective evidence in the medical record…It would appear that Dr. Wright's limitations may consist of what he believes to be the least the claimant is able to do. The undersigned gives the opinions of Dr. Wright some weight in this decision, but not controlling weight, as his conclusions are not supported by objective evidence and not consistent

9

>       with other substantial evidence in the case
>       record.

(R. at 15-16).

Thus, the ALJ discounted the opinions of Dr. Wright because his opinions were not supported by the objective medical evidence, including the back and hand x-rays completed in 2007. However, Dr. Wright stated that his medical findings were supported by evaluations and x-rays from Dr. Gilbert and Dr. Mumford, and by hand x-rays from November 2007 (R. at 291).

On March 5, 2009, Dr. Gilbert noted that x-rays of the right knee showed moderate patellofemoral degenerative disease with some early tibiofemoral changes as well; plaintiff was given a prescription for a cane (R. at 358). Dr. Mumford indicated on April 16, 2009 noted that x-rays of the left knee showed early femorotibial osteoarthritis and central patellar tracking with no significant degenerative change; his impression was early osteoarthritis (R. at 356). On October 15, 2009 Dr. Mumford noted that plaintiff has bilateral knee pain, with the right knee remaining more symptomatic than the left knee. He indicated that plaintiff has progressive symptoms of a mechanical nature, and that he believed they could alleviate some of her mechanical symptoms with an arthroscopic

debridement, which would not cure her arthrosis; plaintiff understood that symptoms may persist despite the procedure (R. at 351). On November 10, 2009, Dr. Mumford performed a right knee arthroscopy on the plaintiff (R. at 350). Dr. Mumford stated that this could not cure her underlying degenerative change, but it may help with mechanical-related symptoms. Post-operative diagnosis was as follows: 1. Grade 3 chondromalacia medial femoral condyle, 2. Grade 3 chondromalacia lateral femoral condyle, 3. Lateral meniscal cyst, and 4. Grade 2 chondromalacia patellofemoral joint (R. at 348). Following the surgery, on November 19, 2009, Dr. Mumford indicated that plaintiff is mobilizing with cane support (R. at 345).

   The ALJ did not cite to any medical or other evidence stating that the opinions of Dr. Wright are not supported by the findings of Dr. Gilbert or Dr. Mumford. The only other medical opinion addressing plaintiff's RFC was that of Dr. Raju. Dr. Raju, after reviewing the medical records, including the right knee surgery from November 2009, found that plaintiff had a sedentary RFC with some additional restrictions (R. at 361, 300-307). However, Dr. Raju did not mention or discuss the opinions of Dr. Wright. Furthermore, the ALJ discounted this RFC finding because of the severity of plaintiff's complaints and because

11

the assessment was prepared by a non-physician (R. at 15). Thus, the ALJ, by his own findings, did not provide a legally sufficient explanation for rejecting the opinion of a treating medical source (Dr. Wright) in favor of a non-examining or consulting medical source. Robinson, 366 F.3d at 1084.

The ALJ further stated that the opinions of Dr. Wright are in opposition to plaintiff's back and hand x-rays from 2007 (R. at 16). The ALJ correctly noted that a lumbar spine x-ray from 2007 indicated a normal lumbar spine (R. at 14, 271). However, Dr. Wright did not base his opinions on the back x-rays, but on the x-rays and reports from Dr. Gilbert and Dr. Mumford and based on the hand x-rays from November 2007.

The hand x-rays from November 2007 indicated the following:

> IMPRESSION: There is mild soft tissue swelling seen about the PIP joints of the second, third and fourth fingers. The distribution of the soft tissue swelling would be suggestive of rheumatoid arthritis. No definite bony arthropathy is noted.

(R. at 267). The ALJ did not cite to any medical evidence indicating that these hand x-rays are in opposition to the opinions of Dr. Wright, who opined that plaintiff had limitations in handling, fingering, feeling and pushing/pulling because of hand pain (R. at 292). An ALJ may reject a treating

physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.  <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1252 (10th Cir. 2002).  The adjudicator is not free to substitute his own medical opinion for that of a disability claimant's treatment providers.  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1221 (10th Cir. 2004).  An ALJ is not entitled to *sua sponte* render a medical judgment without some type of support for his determination.  The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment.  <u>Bolan v. Barnhart</u>, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).  The ALJ clearly erred by failing to cite to any evidence indicating that the opinions of Dr. Wright are in opposition to the hand x-rays.  Furthermore, the ALJ erred by failing to address Dr. Wright's assertion that the evaluations and x-rays from Dr. Wright and Dr. Mumford and the hand x-rays support the limitations he set forth in his report.

     In light of the erroneous findings by the ALJ regarding the opinions of Dr. Wright, this case shall be remanded for further consideration of the medical opinion evidence.  When this case is remanded, the ALJ should consider and address the report from

Dr. Levine. Dr. Levine was asked to provide opinions regarding plaintiff's RFC (R. at 388-402). However, after reviewing the medical evidence, he did not provide an RFC assessment, but stated that, because of the contradictory and/or confusing statements, he was recommending an independent medical examination and a functional capacity assessment by an orthopedist or physiatrist. He also recommended that further x-rays of the knees and hands be performed. He indicated that with the above information, a decision regarding plaintiff's RFC would be more appropriate (R. at 401). The ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Fleetwood v. Barnhart, 211 Fed. Appx. 736, 740 (10th Cir. 2007); SSR 96-8p, 1996 WL 374184 at *5. Dr. Levine's statement raises a legitimate question concerning whether the file contains sufficient evidence to assess plaintiff's RFC. Although the opinion of Dr. Levine was not discussed by the parties, as the court is reversing and remanding for other reasons, the court notes this problem in the hope of forestalling the repetition of avoidable error. Chapo v. Astrue, 682 F.3d 1285, 1292 (10th Cir. 2012).

**IV. Did the ALJ err in his credibility analysis?**

Plaintiff also asserts error by the ALJ in her credibility findings. The court will not discuss this issue in detail because it may be affected by the ALJ's resolution of the case on remand after giving further consideration to the medical opinion evidence, and determining if further medical opinion evidence regarding plaintiff's RFC should be obtained. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004). However, the court will briefly address one issue raised by plaintiff in her brief.

In his decision, the ALJ stated that plaintiff did not take advantage of her physical therapy appointments after her knee surgery (R. at 16). The record indicates that plaintiff either rescheduled or failed to show for her therapy appointments; thus no additional therapy was scheduled (R. at 363). The ALJ stated that this failure was a basis for finding plaintiff less credible (R. at 16). While failure to seek treatment may be probative of severity, the ALJ has a basic duty of inquiry to ask the plaintiff why he/she did not seek treatment, or why it was sporadic. Kratochvil v. Barnhart, 2003 WL 22176084 at *5 (D. Kan. Sept. 17, 2003). Similarly, SSR 96-7p states the following:

15

> On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. <u>However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment</u>. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility.

SSR 96-7p, 1996 WL 374186 at *7 (emphasis added); cited with approval in <u>Madron v. Astrue</u>, 311 Fed. Appx. 170, 178 (10th Cir. Feb. 11, 2009).

However, at the hearing, the ALJ, contrary to SSR 96-7p, failed to question the individual in order to determine if there were good reasons for the individual not seeking medical treatment.  Plaintiff informed the Appeals Council on January 3, 2011 that she could not finish her therapy because her father

had just recently been diagnosed with a brain tumor and she had to spend time with her family during the surgery and the time her father was in the hospital (R. at 255). On remand, the ALJ must consider plaintiff's reasons for not attending the therapy sessions, as mandated by SSR 96-7p.

Defendant also argues that the failure to follow medical advice can be taken into account in analyzing plaintiff's credibility without considering the Frey factors (Doc. 22 at 17-18). Defendant's argument is without merit. In the case of Essman v. Astrue, Case No. 09-4001-SAC (D. Kan. Dec. 16, 2009), the court held that:

> ...before the ALJ may rely on a claimant's failure to pursue treatment or take medication as support for his determination of noncredibility, he or she should consider: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and if so, (4) whether the refusal was without justifiable excuse. Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993); Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987). This analysis applies when noncompliance with a physician's recommendation is used as part of the credibility determination. Piatt v. Barnhart, 231 F. Supp.2d 1128, 1129 (D. Kan. Nov. 15, 2002)(Robinson, J.); Silverson v. Barnhart, Case No. 01-1190-MLB (D. Kan. May 14, 2002)(Belot, J.); Goodwin v. Barnhart,

17

> 195 F. Supp. 2d 1293, 1294-1296 (D. Kan. (April 15, 2002)(Crow, S.J.).
>
> Defendant contends that the Frey test is not applicable in this case. However, the ALJ appears to have discounted plaintiff's credibility because he quit taking prescription medications. Thus, this is not a situation where the Frey test is not required because the treatment or medication had not been prescribed, and the ALJ is simply considering what attempts the claimant made to relieve their pain. See McAfee v. Barnhart, 324 F. Supp.2d 1191, 1201 (D. Kan. 2004); Jesse v. Barnhart, 323 F. Supp.2d 1100, 1108 (D. Kan. 2004); Billups v. Barnhart, 322 F. Supp.2d 1220, 1226 (D. Kan. 2004).

Essman, Doc. 23 at 20-21).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 24th day of October 2012, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge